UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DISTRICT

| | |
|---|---|
| Gregory Brown, | ) C/A No. 4:08-0663-TLW-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Kelvin Washington;<br>Michael Johnson, | ) |
| Defendants. | ) |

## I. PROCEDURAL HISTORY

The *pro se* plaintiff filed this under 42 U.S.C. § 1983[1] on February 29, 2008, alleging violations of his constitutional rights. Plaintiff is currently incarcerated at Ridgeland Correctional Institution. At all times relevant to the allegations in the complaint, plaintiff was incarcerated as a pretrial detainee at Williamsburg County Detention Center ("WCDC"). Plaintiff filed an amended complaint on February 5, 2009. Defendants filed a motion for summary judgment on July 27, 2009. The undersigned issued an order filed July 28, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response on October 5, 2009, and defendants filed a reply on October 15, 2009.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II. DISCUSSION

## A. ALLEGATIONS

While incarcerated at WCDC, plaintiff alleges that he was assaulted by another inmate. In his response in opposition to motion for summary judgment, plaintiff alleges that the name of the inmate was Kendrick Linny and that he struck plaintiff in the face with a broomstick on January 6, 2008, leaving him with a swollen face and pain in his lower jaw. Plaintiff asserts that defendants were deliberately indifferent to his medical needs. In his response, plaintiff asserts that the "officers" had knowledge of inmate Kendrick Linny's violent behavior prior to the assault on plaintiff and that Inmate Linny had been moved from B-wing to C-wing for allegedly assaulting another inmate in B-wing. Plaintiff asserts in his response that inmate Linny was in segregation in C-wing but was let out for recreation with him and the other pre-trial detainees when the assault happened. However, plaintiff does not assert that there had been any previous problems between plaintiff and this inmate or that defendants personally knew of any potential problems.

Defendants submitted affidavits with their motion for summary judgment. Defendants submitted the affidavit of Kelvin Washington ("Washington") who attests that he was employed with the Williamsburg County Sheriff's Office as the Sheriff at the time referenced in the complaint/amended complaint. Washington attests that he had no knowledge that plaintiff was placed in any danger or that a threat of danger existed at any point in time prior to the date of the incident. Washington asserts that he was not responsible for the medical treatment of plaintiff but understands plaintiff was sent to the emergency room to verify that he was alright. (Doc. #41-2).

Defendants also submitted the affidavit of Michael Johnson ("Johnson") who attests that at the time of the complaint/amended complaint he was employed by the WCDC as the Administrator.

Johnson attests that a review of his inmate file indicates that he never filed a grievance concerning the allegations contained in his complaint as to a failure to protect or improper medical attention. (Johnson affidavit). As he did not file a grievance, it would be impossible for him to have appealed any decision from such grievance. Id. Johnson had no knowledge that plaintiff was placed in any danger or that such threat existed at any point in time prior to the date of the incident. Id. As the administrator, Johnson was not responsible for the medical treatment of plaintiff but he does forward to the nurse any grievances and/or requests for medication attention that he receives. Id. The contracted medical personnel choose how to appropriately handle a request and he has no role in that determination. Id. However, Johnson asserts that it is his understanding that plaintiff was sent to the emergency room to verify that he was alright. (Doc. #41-3).

## B. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with

3

"specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee

4

is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

### D. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants have argued the affirmative defense of failure to comply with the PLRA's exhaustion requirement and has moved for summary judgment on that basis as well as on the merits of the allegations. As set out above, defendants submitted the affidavit of Johnson, the administrator at the WCDC, who attests that plaintiff did not file any grievances with respect to the allegations raised in his complaint.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner[2] exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); *see also* Claybrooks

---

[2] A "prisoner", is defined to mean, "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees such as the plaintiff here. See also Bunch v. Nash, 2009 WL 329884, at 4, n.2 (D.S.C. February 10, 2009); Tate v. Anderson 2007 WL 28982 at 4 (D.S.C. January 3, 2007).

v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

A review of the amended complaint reveals plaintiff checked "yes" that there was a prisoner grievance procedure at the WCDC and that "an incident report was filed." (See Doc. #22, p.2). However, plaintiff has failed to show or assert that he filed a grievance or that he exhausted his administrative remedies.[3] Based on the evidence presented, it is recommended that defendants' (document #41) motion for summary judgment be granted for failure to exhaust administrative remedies.

In the alternative, the undersigned will briefly discuss the merits.

Deliberate Indifference to a Risk of Harm

As previously stated, plaintiff alleges that the defendants failed to prevent an attack from another inmate. In the amended complaint, plaintiff asserts that "the assault was the result of prison negligence. .. ." (Doc.#22, p. 4). Defendants argue that his claim with regard to a failure of duty to protect fails in that plaintiff has presented no evidence that any defendant was at any time deliberately indifferent to a substantial risk of serious harm to the plaintiff.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

---

[3] In his response to summary judgment, plaintiff asserts that the WCDC doesn't give intake inmate handbooks upon entering the facility and does not post any Grievance Procedure in plain view for inmates.

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less than purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer, supra. The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant

risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

The undersigned concludes that the plaintiff has failed to prove that these prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. Plaintiff asserts in his response to the motion for summary judgment that "officers" had knowledge of inmate Kendrick Linny's violent behavior and had moved him from B-wing to C-wing for allegedly assaulting another inmate on B-wing. However, plaintiff does not allege or offer any evidence that defendants knew of and disregarded any potential harm to the plaintiff. Specifically, plaintiff does not allege that the named defendants had knowledge of any threat of harm to the plaintiff. In fact, plaintiff asserts in his amended complaint that defendants should be held liable for their subordinates's actions under supervisor liability.[4] Plaintiff

---

[4] Defendants argue that they cannot be held liable under a respondeat superior theory of recovery. It appears plaintiff named defendants as they are charged with running the county jail as the Sheriff and Administrator. However, under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite

(continued...)

also alleged that "personal involvement arises when you challenge . . . rules of this prison not creating policy/procedure/custom that prevent wrong violate constitutional rights under color of state law." (Doc.#22, p. 6). Accordingly, plaintiff has not shown that the named defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that defendants drew the inference. Farmer, supra; Rich v. Bruce, 129 F.3d 336 (4th Cir. 1997)("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").

Assuming defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) is violated by negligent failure to protect inmates from violence. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.

### E. MEDICAL INDIFFERENCE

Plaintiff has made allegations that defendants were indifferent to his medical needs not giving him timely treatment after his alleged injuries. Plaintiff asserts that defendants were responsible for a two-day delay in him receiving treatment. Plaintiff submitted a copy of a letter

---

[4](...continued)
their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). Plaintiff has failed to meet this burden. Accordingly, this action should be dismissed against these defendants.

from Williamsburg Regional Hospital which reveals that he was seen on January 8, 2008, and was discharged the same day. Defendants assert that they are not involved in any medical decisions which are left to the discretion of the contracted outside medical personnel. (See reply, p. 3). However, Washington and Johnson submitted their affidavits attesting that, from their general understanding, plaintiff was sent to the emergency room to confirm that he was alright.

Any claims of medical indifference as to defendants should be dismissed as they are not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that these defendants were personally involved with any alleged denial or delay of treatment or that they deliberately interfered with plaintiff's medical treatment. Additionally, plaintiff fails to show anything more than *de minimis* injury. Therefore, any claims against the defendants for medical indifference fails.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment.

11

As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by these defendants. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

### F. IMMUNITY

Defendants assert that it is not clear whether plaintiff has filed his claims against them in their individual or official capacity. Therefore, defendants assert out of an abundance of caution, they are asserting both Eleventh Amendment and qualified immunity.

Qualified Immunity

Defendants argue that they are all entitled to qualified immunity. Defendants assert plaintiff cannot establish that any defendant violated a constitutional right.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a

valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified

immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

Eleventh Amendment Immunity

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the WCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its

14

undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. <u>Will</u>, <u>supra</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the WCDC and, thus, state officials acting in their official capacity while employed by the WCDC. Therefore, they are entitled to Eleventh Amendment immunity in their official capacity from monetary damages.

### G. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III. CONCLUSION

Based on the above reasoning, plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (doc. #41) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.


Respectfully submitted,


<u>Thomas E. Rogers, III</u>
Thomas E. Rogers, III
United States Magistrate Judge

December <u>9</u>, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**